UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| UNITED STATES OF AMERICA | § | No. 5:18-CR-625(1)-DAE |
|---|---|---|
| Plaintiff, | § | |
| vs. | § | |
| FRANCISCO HERNANDEZ-LOPEZ | § | |
| Defendant. | § | |

ORDER DENYING DEFENDANT'S MOTION TO DISMISS THE
INDICTMENT (Dkt. # 30)

Before the Court is a Motion to Dismiss the Indictment filed by Defendant Francisco Hernandez-Lopez ("Lopez" or "Defendant") on November 16, 2018. (Dkt. # 30.) On November 29, 2018, the Court held a hearing on the motion. At the hearing, Charles L. Jenkins, Esq. represented the Government, and John F. Waldon, Esq. represented the defendant. The motion is fully briefed and ripe for review.

After careful consideration of the memoranda and exhibits filed in support of and in opposition to the motion, as well as the arguments advanced at the hearing, the Court—for the reasons that follow—**DENIES** Defendant's Motion to Dismiss the Indictment. (Id.)

1

BACKGROUND

Defendant Lopez is a citizen of El Salvador. (Dkt. # 30-1, Ex. A at 1.) On July 15, 2004, he was found by immigration authorities in San Antonio, Texas. (Id.) He was issued a Notice to Appear ("NTA") that alleged he was subject to removal from the United States for being a noncitizen present in the United States without being admitted or paroled. (Id.) The NTA stated that his immigration hearing would be held at "800 Dolorosa Street, Suite 300, San Antonio, Texas, US 78207." (Id.) However—and central to Defendant's argument—the NTA only stated that the hearing would be held "on a date to be set at a time to be set." (Id.) To apprise Defendant of the actual date and time of his hearing, he was sent a series of Notices of Hearing.[1]

At the immigration hearing, held on May 5, 2005,[2] the immigration judge granted Lopez a voluntary departure in lieu of removal, ordering him to

---

[1] It appears Defendant's hearing date was continued twice: first from January 20, 2005 to March 17, 2005; and then from March 17 to May 5, 2005. (Dkts. ## 39-2–39-4, Exs. 2–4).

[2] The Government represents that Lopez was present at the hearing. (Dkt. # 35 at 2.) Defendant does not contest this representation. (See Dkt. # 30.) Further, the evidence in the record supports this conclusion: (1) Defendant received a notice of hearing specifying the date and time of his proceedings, (Dkt. # 39–4, Ex. 4: (2) the immigration judge's order indicates Lopez waived his right to appeal, (See Dkt. # 30-2, Ex. B at 2.); and (3) the immigration court's order was personally served on Defendant on the same date as the hearing, (See Id.).

2

leave the United States on or before September 2, 2005. (Dkt. # 30-2, Ex. B at 1.) At the hearing, Lopez also waived his right to appeal. (Id. at 2.)

Lopez failed to depart by the required date, and a Warrant of Removal/Deportation was issued on December 3, 2005. (Dkt. # 35-1, Ex. A at 1.) Lopez was removed on June 16, 2006. (Dkt. # 35-2, Ex. B at 1.)

At some later date, Lopez reentered the United States and was found by immigration authorities in San Antonio, Texas. On August 1, 2018, the prior Order of removal was reinstated. (Id.) On August 22, 2018, a grand jury returned an indictment charging Defendant with illegal reentry in violation of 8 U.S.C. 1326.

On November 16, 2018, Defendant filed the instant motion to dismiss, alleging that: (1) his 2006 removal proceeding and resulting removal order were invalid because the NTA was defective in failing to state the date and time of his immigration hearing; and (2) consequently, the immigration judge had no jurisdiction to conduct removal proceedings. (Dkt. # 30 at 2.) On November 20, 2018, the Government filed a response. (Dkt. # 35.) The Court held a hearing on this matter on November 29, 2018. With the Court's permission, the Government filed a supplemental response on the same day. (Dkt. # 38.)

DISCUSSION

A defendant charged with illegal reentry in violation of 8 U.S.C. § 1326 has a due process right to challenge the removal order upon which the charge is predicated in the criminal proceeding before the district court. United States v. Mendoza-Lopez, 581 U.S. 828, 837–38 (1987). After Mendoza-Lopez, the Fifth Circuit held that to collaterally attack a prior removal order in a criminal proceeding, the alien must demonstrate that "(1) the removal hearing was fundamentally unfair; (2) the hearing effectively eliminated the right of the alien to challenge the hearing by means of judicial review of the order; and (3) the procedural deficiencies caused the alien actual prejudice." United States v. Lopez-Ortiz, 313 F.3d 225, 229 (5th Cir. 2002).

The Fifth Circuit regards this test as "effectively codified" in 8 U.S.C. 1326(d). United States v. Lopez-Vasquez, 227 F.3d 476, 483 n.13 (5th Cir. 2000). Section 1326(d) provides that an alien may not challenge the validity of a removal order unless the alien establishes that: "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceeding at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d). To successfully challenge a removal order, the alien must satisfy all three prongs. United States v. Cordova-Soto, 804

4

F.3d 714, 719 (5th Cir. 2015). "If the alien fails to establish one prong of the three part test, the Court need not consider the others." Id. (quoting United States v. Mendoza-Mata, 322 F.3d 829, 832 (5th Cir. 2003)).

The Fifth Circuit has also required a showing of actual prejudice. Id. at 719. To show actual prejudice, the alien must show that "there was a reasonable likelihood that but for the errors complained of the defendant would not have been deported." Id. (quoting United States v. Benitez-Villafuerte, 186 F.3d 651, 658–59 (5th Cir. 1999)).

Defendant asserts that the present indictment must be dismissed, because his prior removal was defective. (Dkt. # 30 at 2.) He argues that the immigration court was never vested with jurisdiction because the NTA he received was deficient in that it failed to state the date and time of his hearing. (Id.) As such, he concludes that his removal cannot properly serve as the predicate for an illegal reentry charge under 8 U.S.C. § 1326(a).

8 U.S.C. § 1229a directs immigration judges to conduct proceedings which determine the deportability of alien found in the United States. The immigration court's jurisdictional requirements are set forth in regulations promulgated by the Attorney General, pursuant to his statutory authority under 8 U.S.C. § 1103(g)(2). Under the present regulations, jurisdiction vests in an immigration court when a charging document is filed. 8 C.F.R. § 1003.14(a). A

"charging document" is defined as a "written instrument which initiates a proceeding before an Immigration Judge . . . includ[ing] a Notice to Appear." 8 C.F.R. § 1003.13.  8 U.S.C. § 1229(a)(1) sets out the requirements for any NTA for proceedings held pursuant to § 1229a.  In relevant part, the statute requires the NTA must state "[t]he time and place at which the proceedings will be held." 8 U.S.C. § 1229(a)(1)(G)(i).

Defendant's argument is predicated on the Supreme Court's recent decision in <u>Pereira v. Sessions</u>, 138 U.S. 2105 (2018).  In <u>Pereira</u>, the Supreme Court concluded that in the context of the "stop-time rule"[3] a "putative notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a notice to appear under section 1229(a)."  <u>Id.</u> at 2113–14. Applying this ruling to his case, Lopez argues that "[w]here immigration officials file such a putative notice to appear, jurisdiction does *not* vest, and removal proceedings do *not* commence."  (Dkt. # 30 at 4.)  Therefore, the immigration

---

[3] The "stop-time rule" involves a form of relief from immigration proceedings called a "cancellation of removal."  See <u>id.</u> at 2112.  To be eligible for this relief, a non-citizen must be able to show that, among other things, he has "'been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of [an] application' for cancellation of removal."  <u>Id.</u> at 2110 (quoting 8 U.S.C. § 1229b(b)(1)(A)).  Under the "stop time rule," this period of continuous presence is deemed to end when the noncitizen is "served a notice to appear under section 1229(a)."  <u>Id.</u> at 2109 (citing 8 U.S.C. § 1229b(d)(1)(A)).

judge had "no authority to issue an order of removal, and any subsequent removal is illegal." (Id.)[4] As a consequence, Defendant "maintains that he need not satisfy the § 1326(d) framework because he was never 'removed' as a matter of law, as the [immigration judge] lacked jurisdiction over his removal proceedings [and t]hus the Government cannot satisfy the plain language of § 1326." (Dkt. # 30 at 3 n.3.) Because he believes he can also satisfy the requirements of § 1326(d), he also undergoes that analysis in his instant motion. (See id.)

---

[4] The Government presents three arguments in response. First, the NTA Defendant received was proper because it complied with the applicable regulations, propounded by the attorney general, that do not require the NTA filed with immigration court—and vesting it with jurisdiction—to specifically state the time and date of the hearing. See 8 C.F.R. § 1003.13–15. Second, Pereira's holding does not extend to the instant case because it only addressed the "narrower question" of "whether a 'notice to appear' that does not specify the 'time and place at which the proceedings will be held,' as required by § 1229(a)(1)(G)(i), trigger the stop-time rule[.]" Pereira, 138 S Ct. at 2113. According to the Government, Pereira is distinguishable because the stop-time rule specifically references an NTA as defined by § 1229(a), while the "regulations governing the vesting of jurisdiction with the immigration court do not reference the statutory definition of a Notice to Appear[.]" (Dkt. # 35 at 12.) Finally, The Government argues that even if § 1229(a) controls, the "lack of time and place information should be considered a procedural, ministerial defect that still vests jurisdiction in the immigration judge[,]" analogous to a defective criminal charging document, which does not prevent jurisdiction from vesting. (Dkt. # 35 at 15.) In support of this position, the Government cites Gomez-Palacios v. Holder for the proposition that "an NTA need not include the specific time and date of a removal hearing in order for the statutory notice requirements to be satisfied; that information may be provided in a subsequent [Notice of Hearing,]" thou Gomez-Palacios was decided prior to the Supreme Court's decision in Pereira. See 560 F.3d 354, 359 (5th Cir. 2009).

7

The plain language of the statute and of Pereira's holding, on their face, do seem to support Defendant's jurisdictional-defect position. However, even assuming, without deciding, that Lopez's jurisdictional arguments are correct, he is still not entitled to the relief he seeks.[5] Removal orders that suffer jurisdictional

---

[5] Numerous district courts have addressed the issue in the months since Pereira. Several district courts (including at least three other courts in this District) have dismissed § 1326 indictments after finding that the alien had been served with a deficient NTA for the prior removal proceedings, and thus, the immigration judge was never vested with jurisdiction. See United States v. Virgen-Ponce, 320 F. Supp. 3d 1164 (E.D. Wash. 2018); United States v. Lopez-Urgel, No. 1:18-CR-310-RP, 2018 WL 5984845 (W.D. Tex. Nov. 14, 2018); United States v. Alfredo-Valladares, No. 1:17-CR-156-SS, docket no. 44 (W.D. Tex. Oct. 30, 2018); United States v. Pedroza-Rocha, No. EP18-CR-1286-DB, docket no. 53 (W.D. Tex. Sept. 21, 2018); United States v. Cruz-Jimenez, No. A-17-CR-00063, 2018 WL 5779491 (W.D. Tex. Nov. 2, 2018); United States v. Ortiz, No. 3:18-CR-00071-RWG, 2018 WL 6012390 (D.N.D. Nov. 7, 2018). On the other hand, many district courts have found for various reasons that defendants' § 1326 indictments were not subject to dismissal. Some of those courts have determined from the outset that Pereira is inapplicable or distinguishable. See, e.g., United States v. Morales-Hernandez, No. Cr.-18-00365-TUC-RCC (JR), 2018 WL 4492377 (D. Ariz. Sept. 14, 2018); United States v. Munoz-Alvarado, No. CR-18-171-C, 2018 WL 4762134 (W.D. Okla. Oct. 2, 2018); United States v. Fernandez, No. 7:18-CR-11-BO-1, 2018 WL 4976804 (E.D.N.C. Oct. 15, 2018). However, others have found that Pereira is applicable (and that the defendant's underlying NTA was deficient) but have nonetheless held that the specific defendant failed to satisfy the statutory requirements for a collateral attack on a prior removal order. See, e.g., United States v. Zapata-Cortinas, SA-18-CR-00343-OLG, 2018 WL 6061076 (W.D. Tex. Nov. 20, 2018); United States v. Santos Larios-Ajualat, No. 18-10076-JWB, 2018 WL 5013522 (D. Kan. Oct. 15, 2018); United States v. Lira-Ramirez, No. 18-10102-JWB, 2018 WL 5013523 (D. Kan. Oct. 15, 2018); United States v. Mendoza-Sanchez, No. 17-cr-189-JD, 2018 WL 5816346 (D.N.H. Nov. 5, 2018).

defects can still serve as the basis for a § 1326 prosecution, and a § 1326 defendant must still satisfy the requirements of § 1326(d), which Lopez cannot do.

I.   Jurisdictionally Defective Removal Orders as the Basis for § 1326 Prosecutions

The courts that have decided Pereira's holding requires dismissal of indictments under § 1326 almost universally conclude the lack of jurisdiction in the immigration court absolves the defendant of satisfying the requirements of § 1326(d). See e.g., Cruz-Jimenez, 2018 WL 5779491; Lopez-Urgel, 2018 WL 5984845. For the reasons that follow, this Court disagrees with that conclusion. Other district courts that have recently addressed this issue have reached the same conclusion this Court now reaches. See, e.g., Zapata-Cortinas, 2018 WL 6061076; Mendoza-Sanchez, 2018 WL 5816346.

The enumeration by § 1326(d) of specific requirements necessarily contemplates flawed or invalid removal proceedings serving as the predicate "prior removal" in § 1326 prosecutions where the requirements are not met. The Supreme Court has noted that the language of § 1326 does not limit prosecutions only to those cases in which the underlying removal was lawful. Mendoza-Lopez, 481 U.S. at 834–35 (holding that "the language of [§ 1326] suggests no . . . limitation" that it only applies where the prior deportation was "lawful"). Instead, the Constitutional mandate of due process only required that "at the very least, where the defects in an administrative proceeding foreclose judicial review of the

9

proceeding, an alternative means of obtaining judicial review must be made available before the administrative order may be used to establish conclusively an element of a criminal offense." Id. at 838. § 1326(d) was then added to the statute to comply with the Supreme Court's directive in Mendoza-Lopez that § 1326 defendants be afforded "some meaningful review of the administrative proceedings" before it is made the basis for their criminal convictions. Id. at 837–38.

Unlawful removal orders can thus still serve as the predicate for § 1326 prosecutions so long as the defendant has an opportunity for administrative and judicial review of any errors. See also United States v. Earle, 488 F.3d 537, 547 (1st Cir. 2007) ("[T]he lawfulness of a prior deportation is not an element of § 1326 and the government has no burden to prove it."); United States v. Paredes-Batista, 140 F.3d 367, 376 (2d Cir. 1998) ("Section 1326 does not, on its face, require that the earlier deportation have been 'lawful' to support a conviction for illegal reentry."); United States v. Alvarado-Delgado, 98 F.3d 492, 493 (9th Cir. 1996) (en banc) ("[T]he lawfulness of the prior deportation is not an element of the offense under § 1326 . . . .").

This same rule applies even if a removal order is allegedly invalid or unlawful based on a jurisdictional defect.[6] At least one decision of the Fifth Circuit affirmed a § 1326 conviction even where the underlying removal order was issued by the Board of Immigration Appeals, a tribunal that lacks "the authority to order the removal of an alien in the first instance." United States v. Catelan-Jaimes, 575 Fed. App'x 253, 254 (5th Cir. 2014) (per curiam) (unpublished decision).

Although lack of subject matter jurisdiction is generally not waivable during the underlying proceedings and immediate appeal,[7] see In re Edwards,

---

[6] There appears to be confusion about whether "jurisdiction" in 8 C.F.R. § 1003.14 refers to personal jurisdiction, subject-matter jurisdiction, or both. See Marco v. United States, No. 1:09- cv-761, 2010 WL 3992113, at *8 (S.D. Ohio Oct. 12, 2010) (concluding that "jurisdiction" in 8 C.F.R. § 1003.14(a) "denotes subject-matter jurisdiction"); Shogunle v. Holder, 336 F. App'x 322, 323 (4th Cir. 2009) (concluding that "jurisdiction" had not vested with immigration court under 8 C.F.R. § 1003.14 notwithstanding the fact that alien had appeared at the hearing); Lira-Ramirez, 2018 WL 5013523, at *6 n.4 (explaining why "jurisdiction" in 8 C.F.R. § 1003.14 also contains parallels to the standard requirements for personal jurisdiction, including the service of process). As a general rule, personal jurisdiction can be waived by appearance and failure to object, see Am. Ass 'n of Naturopathic Physicians v. Hayhurst, 227 F.3d 1104, 1106 (9th Cir. 2000), whereas subject-matter jurisdiction cannot be waived at any time during the underlying proceedings. See Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702-03 (1982). Because this Court concludes that even collateral attacks based on defects in an immigration court's subject-matter jurisdiction are subject to the requirements of § 1326(d) (and thus can be "waived"), it is not necessary for the Court to resolve the issue.

[7] On this basis, certain recent post-Pereira decisions have held that the requirements of § 1326(d) cannot bar collateral attacks based on the immigration court's lack of subject matter jurisdiction because subject matter jurisdiction cannot

962 F.2d 641, 644 (7th Cir. 1992), the Supreme Court has indicated that challenges to subject-matter jurisdiction may be waived for the purposes of a subsequent collateral attack. See Chicot Cty. Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 376–78 (1940). The Fifth Circuit has repeatedly applied this doctrine.[8] An exception to this rule is made only where there is "a clear usurpation of power or total want of jurisdiction." Winograd v. Fowler, No. 98-20660, 1999 WL 499565 at *2 (5th Cir. 1999) (per curiam) (unpublished decision).[9]

---

be waived. See Pedroza-Rocha, No. EP-18-cr-1286-DB, docket no. 53 p. 9 ("[S]ubject matter jurisdiction cannot be waived and the immigration court's lack of this jurisdiction justifies dismissing the indictment."); Alfredo-Valladares, No. 17-CR-00156-SS, docket no. 44 p. 4 ("[Defendant] may. . . collaterally attack the judgment as being void for lack of jurisdiction notwithstanding the fact that such grounds are absent from § 1326(d).").

[8] See, e.g., Pico v. Global Marine Drilling Co., 900 F.2d 846, 850 (5th Cir. 1990) ("A court's determination of its own jurisdiction is subject to the principles of res judicata; it generally may not be challenged in a collateral proceeding."); US. v. Hansard, No. 07-30090, 2007 WL 2141950, * 1 (5th Cir. 2007) (per curiam) (unpublished decision) ("Rule 60(b)(4) relief, however, is not available . . . . A district court's exercise of subject matter jurisdiction, even if erroneous, is res judicata and is not subject to collateral attack through Rule 60(b)(4) if the party seeking to void the judgment had the opportunity previously to challenge jurisdiction and failed to do so."); Royal Ins. Co. of Am. v. Quinn L Capital Corp., 960 F.2d 1286, 1293 (5th Cir. 1992) ("If the parties against whom judgment was rendered did not appeal, the judgment becomes final and the court's subject matter jurisdiction is insulated from collateral attack.").

[9] As long as the record supports an "arguable basis" for concluding that subject matter jurisdiction existed, a judgment cannot be collaterally attacked as void. See Fafel v. Dipaola, 399 F.3d 403, 411 (1st Cir. 2005); Nemaizer v. Baker, 793 F.2d 58, 65 (2d Cir. 1986).

Prior to the Supreme Court's decision in Pereira, the immigration judge in Defendant's prior case certainly had an "arguable basis" for believing he had jurisdiction over the removal proceedings based on the now contested NTA and subsequent Notices of Hearing. See Gomez-Palacios, 560 F.3d at 359 (5th Cir. 2009) ("[A]n NTA need not include the specific time and date of a removal hearing in order for the statutory notice requirements to be satisfied; that information may be provided in a subsequent [Notice of Hearing]."). There was no "clear usurpation of power" in issuing the predicate removal order. There is therefore no constitutional, statutory, or judicial doctrine mandating that every collateral attack on subject matter jurisdiction must be entertained.[10] Instead, Defendant must satisfy the elements of § 1326(d) in order to collaterally attack his predicate removal order.

---

[10] The express language of § 1326(d) limits the scope of permissible collateral attacks. See, e.g., United States v. Lira-Ramirez, No. 18-10102-JWB, 2018 WL 5013523, at *7 (D. Kan. Oct. 15, 2018) ("Congress made clear by adopting § 1326(d) that knowingly giving up the opportunity for judicial review in a removal proceeding precludes an alien from challenging the validity of the removal order in a § 1326 prosecution."). And the Fifth Circuit has affirmed a district court determination that jurisdictional defects rendered decisions in removal proceedings "voidable but not void." Castelan-Jaimes, 575 Fed. Appx. at 254. Failure to challenge the underlying removal order on direct appeal meant the requirements of § 1326(d) had not been satisfied, and dismissal of the indictment was not warranted. Id.

II.  The § 1326(d) Requirements

As previously stated, a defendant wishing to collaterally attack his prior removal order must demonstrate that: (1) he exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceeding deprived him of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair. 8 U.S.C. § 1326(d). Additionally, the Fifth Circuit has also held that in the event a defendant demonstrates "fundamental unfairness," he must also demonstrate that such unfairness caused actual prejudice. Benitez-Villafuerte, 186 F.3d at 658. The defendant must prove all of the statutory requirements in order to successfully challenge the predicate deportation order's validity. United States v. Cordova-Soto, 804 F.3d 714, 724 (5th Cir. 2015). Failure to establish any one element of § 1326(d) means the court need not consider the others. Cordova-Soto, 804 F.3d at 719. Defendant's Motion to Dismiss must be denied because he cannot show: (1) exhaustion of administrative remedies; (2) the deprivation of the opportunity for judicial review; or (3) actual prejudice.

  A.  Exhaustion of Administrative Remedies

Lopez argues that he is not required to exhaust his administrative remedies "where the administrative proceedings themselves are void." United Farm Workers of Am., AFL-CIO v. Ariz. Agr. Emp't Relations Bd., 669 F.2d 1249,

14

1253 (9th Cir. 1982); Winterberger v. Gen. Teamsters Auto Truck Drivers & Helpers Local Union 162, 558 F.2d 923, 925 (9th Cir. 1977) ("An administrative proceeding infected with fundamental procedural error, like a void judicial judgment, is a legal nullity and subject to collateral attack." (citing Eagles v. Samuels, 329 U.S. 304, 314 (1946)).

Contrary to Defendant's argument, courts lack the general authority to excuse exhaustion requirements based on equitable arguments where the exhaustion requirement is expressly mandated by statute, as it is in § 1326(d). United States v. Gonzalez-Roque, 301 F.3d 39, 47 (2d Cir. 2002) (internal quotation marks omitted) (Statutory exhaustion requirements such as set forth in § 1326(d) are mandatory, and courts are not free to dispense with them."); see also McCarthy v. Madigan, 503 U.S. 140, 144 (1992) ("Where Congress specifically mandates, exhaustion is required."); cf. United Farm Workers of Am., 669 F.2d at 1253 ("Unless it is specifically required by statute, application of the doctrine of exhaustion of administrative remedies is within the sound discretion of the district court."). Further, the Fifth Circuit has affirmed at least one case in which the district court determined that removal orders rendered without jurisdiction are "voidable but not void." See Castelan-Jaimes, 575 Fed. Appx. at 254.

B.  Deprivation of the Opportunity for Judicial Review

Defendant does not present any evidence or make any direct argument that he was deprived of the opportunity for judicial review of the removal order. Instead, he appears to rely on the substance of his exhaustion argument to dictate this conclusion. (See Dkt. # 30 at 6.) Further, Lopez cannot satisfy this requirement of § 1326(d) because he waived his right to appeal at the immigration hearing. (Dkt. # 30-2, Ex. B at 2.) That a defendant chooses "not to make the attempt" to challenge the flaws in his underlying removal "does not mean that he was deprived of all avenues of judicial review of his removal order." United States v. Roque-Espinoza, 338 F.3d 724, 729–30 (7th Cir. 2003). To the contrary, "a valid waiver of the right to appeal a deportation order precludes a later collateral attack." United States v. Garza-Sanchez, 217 F.3d 806, 808 (9th Cir. 2000); see also United States v. Cerna, 603 F.3d 32, 38 (2d Cir. 2010) (holding that "knowing and voluntary" waiver of appeal rights will "bar collateral attack on the [deportation] order in a subsequent illegal reentry prosecution").

Defendant does not argue that his waiver of the right to appeal was invalid or was not knowing and voluntary. (See Dkt. # 30 at 6.) The record reflects that Defendant voluntarily waived that right during his removal proceeding. (See Dkt. # 30-2, Ex. B at 2.) Defendant had the opportunity for judicial or administrative review of his removal proceedings but choose to waive it.

Therefore, Defendant cannot show that the deportation proceedings improperly deprived him of the opportunity for judicial review, a showing required by § 1236(d).

    C.    <u>Actual Prejudice</u>

Finally, Lopez argues that he suffered actual prejudice because he was ordered removed when the immigration court had no authority to do so. (Dkt. # 30 at 6.) Therefore, he concludes, "but for the [immigration judge's] error of ordering Mr. Lopez's removal when he lacked authority to do so, Mr. Lopez would not have been ordered removed or removed to El Salvador." (<u>Id.</u>)

But Defendant's argument on this point misunderstands the actual prejudice requirement. To show actual prejudice, a defendant must show "that there was a reasonable likelihood that but for the errors complained of the defendant would not have been deported." <u>Benitez-Villafuerte</u>, 186 F.3d at 658–59. Thus, the relevant question under his argument is whether Lopez would still have been deported if the NTA had not been allegedly defective and the immigration court's jurisdiction had properly vested. Defendant has presented no evidence or argument that he would not have been deported.

The record appears to indicate, the Government represents, and Defendant does not contest, that Lopez was present at, and fully participated in, his immigration hearing. (Dkts. ## 39-2–39-4, Exs. 2–4; Dkt. # 30; Dkt. # 30-2, Ex. B

at 1–2; Dkt. # 35 at 18.)  Further, it is uncontested that Defendant is a citizen of El Salvador, with no lawful status in the United States.  There is no basis in the record to conclude that the results of a validly constituted immigration proceeding would have been any different then the results of the proceeding he now challenges.  Thus, because the results of Lopez's immigration proceedings were a "foregone conclusion[,]" he "can show no prejudice resulting from any deficiencies in the . . . proceeding [and] cannot successfully collaterally attack his deportation."  Benitez-Villafuerte, 186 F.3d at 659.

## CONCLUSION

For the reasons stated, the Court **DENIES** Defendant's Motion to Dismiss the Indictment.  (Dkt. # 30.)

**IT IS SO ORDERED.**

**DATED**: San Antonio, Texas, December 3, 2018.

_____
David Alan Ezra
Senior United States Distict Judge